DAVID R. MINTER, Employee, Plaintiff v. OSBORNE COMPANY, Employer, SELF-INSURED, (Key Risk Management Service), Defendants

No. COA 96-1220

(Filed 5 August 1997)

### 1. Workers' Compensation § 113 (NCI4th)— insect sting— injury arising out of employment—increased risk test

The increased risk test is the appropriate test for determining whether an employee's injuries from an insect sting arose out of his employment.

### 2. Workers' Compensation § 114 (NCI4th)— insect sting—not injury arising out of employment

Plaintiff failed to show that an insect sting he received while working as a carpenter for defendant employer was an accident or injury arising out of his employment because he failed to show that he was at an increased risk of being stung than a member of the public. Although the record contains statements by plaintiff's coworkers that fresh wood attracts stinging insects or bees, there was no evidence as to what type of insect stung plaintiff or that he was working with fresh wood.

Appeal by defendants from the opinion and award filed by the Industrial Commission on 24 May 1996. Heard in the Court of Appeals 30 April 1997.

*Donaldson & Horsley, P.A., by Fredrick W. Evans, for plaintiff appellee.*

*Tuggle Duggins & Meschan, P.A., by J. Reed Johnston, Jr., for defendant appellants.*

COZORT, Judge.

Plaintiff-employee was stung by an insect while working for defendant-employer. After hospital treatment, plaintiff suffered obstructive coronary artery disease. The Industrial Commission held that the sting was an injury by accident and directed defendant insurer to pay all medical expenses, including angioplasty. We find no compensable injury, and we reverse.

The evidence presented at the hearing before the Deputy Commissioner shows the following. On or about 30 August 1993,

plaintiff David Minter began work as a carpenter for defendant construction company. On 8 December 1993, Minter was stung by an insect while working on the roof at a job site. Plaintiff reported this sting to his supervisor and was taken to the doctor's office. Plaintiff is allergic to bee stings, and at the doctor's office, he was given epinephrine and Benadryl. At some point, plaintiff began complaining of chest pain and was transported to a hospital. Plaintiff was treated and released. Plaintiff returned later with increased swelling and chest pain and was admitted to the hospital.

At the hospital, diagnostic tests revealed that plaintiff had obstructive coronary artery disease. Plaintiff subsequently underwent surgery to remove this blockage. On 20 January 1994, Minter made a claim for workers' compensation benefits.

The Industrial Commission found that plaintiff "sustained an injury by accident arising out of and in the course of his employment with defendant-employer materially aggravat[ing] his pre-existing coronary artery disease for the worse." Plaintiff was awarded temporary total disability, and defendant was also directed to pay "all reasonable medical expenses incurred or to be incurred as the result of plaintiff's injury by accident on 8 December 1994 and the aggravation thereby of his coronary artery disease." Commissioner Dianne C. Sellers dissented, opining that plaintiff's "injury did not arise out of his employment with defendant since plaintiff's employment did not place him at a greater risk of sustaining an insect bite or sting than the public generally." Defendants appeal.

Defendants first contend that plaintiff's injury did not arise out of his employment. We agree.

To be compensable, an insect sting must be an injury by accident which arose out of and in the course of plaintiff's employment. N.C. Gen. Stat. § 97-2(6) (1996 Cum. Supp.). Finding no published North Carolina cases on insect bites or stings with respect to compensability under workers' compensation claims, we turn to cases from other jurisdictions for guidance.

The jurisdictions which have addressed this issue have considered it in terms of the risk of insect bite to which the employee is exposed due to his employment. In *Renshaw v. Merrigol-Adler Bakery*, 212 Neb. 662, 325 N.W.2d 46 (1982), the Nebraska Supreme Court held that the employee could not recover workers' compensation benefits because he had not shown that he was at greater

risk of being stung than the risk to which the general public is exposed. In *Dawson v. A & H Mfg. Co.*, 463 A.2d 519 (R.I. 1983), the Rhode Island Supreme Court affirmed the Commission's denial of benefits where there was no evidence regarding the nexus between the employee's sting and his employment as a stock boy. The Rhode Island court adopted an actual risk test where the employee was required to show that the risk of sting, even though common to the public, was in fact a risk of his employment. *Id.* at 521. In his commentary regarding the *Dawson* case, Professor Lex Larson describes the test the court applied as indistinguishable from the increased risk test. 1 A. Larson & L. Larson, *Larson's Workers' Compensation Law* § 8.6 (1996).

The case upon which our Commission relied is *Poinsetta Gifts v. Evans*, 393 So. 2d 8 (Fla. Dist. Ct. App. 1980). In that case the Florida Industrial Commission awarded compensation for an employee who was hypersensitive to bees. The award was affirmed per curiam without an opinion. In the accompanying dissenting opinion is a statement to the effect that the majority affirmed the award because the employee was at work when she was stung; therefore, her work placed her in a position of risk. *Id.* at 9. We find our Commission's reliance on this case is misplaced. Under other areas of workers' compensation law our Supreme Court has rejected the positional risk doctrine. *See Roberts v. Burlington Industries*, 321 N.C. 350, 358, 364 S.E.2d 417, 423 (1988) (employee traveling home from business trip killed when he attempted to assist an injured pedestrian was not an injury arising out of course of employment).

[1] The test our courts have used in similar situations to determine whether the injury arose out of employment is the increased risk test. We adopt the increased risk test for this case. In *Pope v. Goodson*, 249 N.C. 690, 107 S.E.2d 524 (1959), our Supreme Court applied the increased risk test to an employee who was struck by lightning. The court found the evidence showed that

> Pope, when killed by lightning, by reason of his employment had on wet clothes, and had tied around his waist a nail apron containing nails, and that these circumstances, incidental to his employment, peculiarly exposed him to a risk of injury from lightning greater than that of other persons in the community. Such being the case his death is compensable under our Workmen's Compensation Act as an injury by accident arising out of and in the course of his employment.

**MINTER v. OSBORNE CO.**

[127 N.C. App. 134 (1997)]

*Id.* at 698, 107 S.E.2d at 529-30. *See also, Dillingham v. Yeargin Construction Co.*, 320 N.C. 499, 358 S.E.2d 380, *reh'g denied*, 320 N.C. 639, 360 S.E.2d 84 (1987) (applied increased risk test to employee who suffered cardiac arrest while wearing heavy radiation suit in high temperature workplace); *Culpepper v. Fairfield Sapphire Valley*, 93 N.C. App. 242, 248-49, 377 S.E.2d 777, 781-82, *aff'd*, 325 N.C. 702, 386 S.E.2d 174 (1989) (cocktail waitress' employment placed her at increased risk of sexual assault not shared by general public). The increased risk test is also incorporated into the Workers' Compensation statute in regards to occupational diseases. N.C. Gen. Stat. § 97-53(13) (1991) excludes from occupational diseases those to which the general public "is equally exposed outside of the employment."

Having determined the increased risk test is the appropriate test for ascertaining whether an employee's injuries from an insect sting arose out of his employment, we now apply it to the present case. Our standard of review is whether the Commission's findings are supported by any competent evidence in the record and whether the findings support its conclusions. *Barham v. Food World*, 300 N.C. 329, 331, 266 S.E.2d 676, 678, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 105 (1980).

[2] Central to this case is the Commission's finding number seven:

On the day plaintiff was stung on 8 December 1993, he was working with freshly cut wood on the construction site. Bees and other types of insects are attracted to and may gather on or around freshly cut wood. The Full Commission finds that there is credible evidence in the record that bees had been seen earlier on the day in question in the area where plaintiff and others were working.

Based on this finding the Commission concluded that, "On 8 December 1994 [*sic*] plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer materially aggravated [*sic*] his pre-existing coronary artery disease for the worse."

We find no competent evidence in the record to support finding number seven, which precludes the use of the finding to support the Commission's conclusion. First, Minter offered no evidence as to what type of insect stung him. At the hospital and at the hearing before the Deputy Commissioner, Minter indicated that he was

allergic to bees. Dr. James Austin, who treated Minter in the emergency room on 8 December 1993, initially diagnosed Minter with an allergic reaction to a "bee/insect sting." Furthermore, we have reviewed the record on appeal and transcript and find that there is no evidence that Minter was working with "green" or "fresh wood."

The record contains some reference by plaintiff's coworkers that fresh wood attracts some sort of stinging insect. At the hearing before the Deputy Commissioner, construction worker Jerry Younger stated that "new lumber will draw yellow jackets." Plaintiff's exhibit number ten, offered at the hearing, contains the transcription of an unsworn telephone conversation between plaintiff's supervisor and an insurance adjuster. In this conversation, there is some reference to new wood and lumber attracting bees. This evidence is not competent or credible and cannot support the finding that "[b]ees and other types of insects are attracted to and may gather around freshly cut wood." Minter offered no expert testimony regarding bees or other insects, their propensity to gather around any area, or that they would be present in December. Furthermore, Younger testified that he believed he was "more likely to get stung off the job than on the job."

Even if we were to find that plaintiff's coworker's unsworn statement was competent and credible evidence, there is still no evidence that plaintiff was stung by a yellow jacket or a bee or that he was working with fresh wood. We simply cannot rely on unsworn, unsupported and incompetent statements to support compensation in this case. *Guy v. Burlington Industries*, 74 N.C. App. 685, 329 S.E.2d 685 (1985). In this case of first impression, we must have some scientific basis and specific evidence on which to conclude that plaintiff was at an increased risk of being stung at the construction site.

Plaintiff has the burden of proof to show that the sting was an injury that arose out of and in the course of his employment. *Roberts*, 321 N.C. at 354, 364 S.E.2d at 420. We hold that plaintiff failed to show that he was at an increased risk of being stung than a member of the general public. Since there is no evidence to support a finding that plaintiff was at an increased risk of insect stings, the conclusion that the sting was an accident or injury arising out of the employment is error and the award of benefits must be reversed.

Since we hold that in this case the employee has not shown the insect sting to be a compensable injury, we do not reach plaintiff's

SOCKWELL & ASSOC., INC. v. SYKES ENTERPRISES, INC.

[127 N.C. App. 139 (1997)]

second assignment of error that the sting materially aggravated his pre-existing condition. We remand the cause to the Commission for entry of an opinion denying plaintiff's claim.

Reversed and remanded.

Judges MARTIN, John C., and McGEE concurred in this opinion prior to 31 July 1997.