GENE DENNING, Employee, Plaintiff-Appellant,
v.
INTERSTATE BRANDS CORP., Self-Insured Employer, and
BROADSPIRE, Servicing Agent, Defendants-Appellees,
No. COA08-1544.
Court of Appeals of North Carolina.
Filed: July 21, 2009.
This case not for publication
Hardison & Associates, PLLC, by Benjamin T. Cochran and Karen Collins, for plaintiff-appellant.
Wilson & Ratledge, P.L.L.C., by Kristine L. Prati, for defendants-appellees.
JACKSON, Judge.
Gene Denning ("plaintiff") appeals the opinion and award of the North Carolina Industrial Commission ("Commission") that denied workers' compensation benefits for plaintiff's reconstructive back surgery. For the following reasons, we affirm.
Plaintiff was involved in a work-related automobile accident in 1981, injuring his back. He injured his back again in 1998. Although he could not pinpoint a specific incident, he developed significant pain in his back while working. He did not seek workers' compensation benefits for that incident. Plaintiff underwent a lumbar microdiskectomy on 11 February 1999. He returned to work on 6 April 1999.
On 17 June 2000, at approximately 4:00 a.m., plaintiff was making a delivery stop at a Wal-Mart when he stepped out of his truck and into a manhole, sustaining injuries. On the day of the accident, plaintiff went to Urgent Care in Smithfield. On 23 June 2000, plaintiff went to Immediate Care of Goldsboro, where he received treatment for a finger laceration and leg ecchymosis. He told doctors that "since his fall his back has been hurting a little more than ususal[.]" On 29 June 2000, plaintiff again went to Immediate Care of Goldsboro; he was informed he could return to work as tolerated.
Plaintiff was next seen by a doctor on 11 October 2000. He went to Immediate Care of Goldsboro with back and hip pain, explaining that, over the previous few days, his back pain had gotten progressively worse. His diagnosis was low back pain and possible exacerbation of lumbar disc disease.
On 8 November 2000, plaintiff went to Goldsboro Orthopaedic Associates, P.A. where he saw Doctor William de Araujo ("Dr. Araujo"). Dr. Araujo diagnosed a lumbar strain. X-rays revealed a previous compression fracture with possible burst component at L2. Dr. Araujo referred plaintiff to physical therapy.
On 11 December 2000, plaintiff's MRI revealed extensive degenerative changes at L4-5 and bilateral forminal stenosis at L2-3 and L3-4, secondary to large osteophytic spurs. Dr. Araujo referred plaintiff to Doctor Scot Reeg ("Dr. Reeg") for a surgical evaluation.
Plaintiff saw Dr. Reeg of the Center for Scoliosis & Spinal Surgery, PLLC on 4 January 2001. Although Dr. Reeg advised plaintiff that he was a surgical candidate, plaintiff did not wish to undergo surgery at that time. Plaintiff reiterated his disinterest in surgery at his 10 April 2001 follow-up appointment. A rehabilitation professional was assigned to plaintiff's claim on or about 5 September 2001.
On 2 October 2001, Dr. Reeg assigned permanent work restrictions of no lifting over twenty pounds except on occasion. He also determined that plaintiff was at maximum medical improvement and assigned a ten percent (10%) permanent partial disability rating, assuming that plaintiff did not undergo surgery. Plaintiff continued to state that he did not want to have surgery.
Plaintiff underwent an independent medical evaluation on 16 May 2002 with Doctor Greig V. McAvoy ("Dr. McAvoy"), who deferred to Dr. Reeg's assessment of plaintiff's condition, but opined that his current condition was not related to the June 2000 fall.
On 24 June 2002, defendants informed plaintiff via a Form 61 that his need for surgery was not related to the June 2000 incident, but rather a pre-existing and on-going problem. When plaintiff was informed that workers' compensation would not pay for his surgery, he said that he "was going to have to have the operation somehow or another." Dr. Reeg performed an anterior and posterior spinal instrumentation and fusion on 31 July 2002, which was paid for through plaintiff's regular medical insurance.
Plaintiff last worked for defendants on or about 13 July 2002. He continued to be paid his salary from 27 July 2002 through 18 January 2003.
On 9 August 2002, defendants attempted to settle plaintiff's workers' compensation claim based upon a ten percent (10%) rating pursuant to Dr. Reeg's pre-surgery assessment. Defendants paid a total of $5,905.43 in medical compensation through 10 September 2002. On 19 July 2006, plaintiff filed a Form 18, formally requesting workers' compensation benefits. Defendants again attempted to settle plaintiff's workers' compensation claim in 2006 by filing a Form 21. On 18 August 2006, plaintiff filed a Form 33 request for hearing, seeking compensation for a ten percent (10%) permanent partial disability rating. On 5 October 2006, the Commission determined that it had insufficient information to approve a proposed settlement. On 24 October 2006, defendants filed a Form 33R denying a work-related injury by accident such that plaintiff was not entitled to payment for permanent partial disability.
The case was heard on 12 June 2007. Deputy Commissioner Philip A. Baddour, III filed an opinion and award on 22 January 2008 concluding that a causal relationship existed between the 17 June 2000 accident and plaintiff's need for back surgery, awarding compensation based upon a fifty-five percent (55%) permanent partial disability rating, and awarding compensation for plaintiff's back surgery. Defendants filed a notice of appeal to the full Commission on 8 February 2008.
The Commission reviewed plaintiff's claim on 7 August 2008 and filed an opinion and award on 6 October 2008 awarding workers' compensation benefits based upon a permanent partial disability rating of five percent (5%) and denying benefits related to the reconstructive back surgery after concluding that no causal relationship existed. Plaintiff appeals.
Plaintiff argues that the Commission erred in concluding that no causal relationship existed between the 17 June 2000 incident and his need for back surgery. We disagree.
This Court reviews an award from the Commission to determine: "(1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." Clark v. Wal-Mart, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005). The "Commission is the sole judge of the credibility of the witnesses and the [evidentiary] weight to be given their testimony[;]" however, "findings of fact by the Commission may be set aside on appeal when there is a complete lack of competent evidence to support them." Young v. Hickory Bus. Furn., 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000) (citations and internal quotation marks omitted). "The Commission's findings of fact are conclusive on appeal if supported by competent evidence. This is so even if there is evidence which would support a finding to the contrary." Sanderson v. Northeast Construction Co., 77 N.C. App. 117, 121, 334 S.E.2d 392, 394 (1985) (citing Morrison v. Burlington Industries, 304 N.C. 1, 282 S.E.2d 458 (1981)). We review the Commission's conclusions of law de novo. Griggs v. Eastern Omni Constructors, 158 N.C. App. 480, 483, 581 S.E.2d 138, 141 (2003).
Plaintiff contends that, because the parties stipulated that he suffered a compensable injury on 17 June 2000, he was entitled to a rebuttalable presumption that the back surgery was directly related to that injury. Plaintiff relies upon Perez v. American Airlines/AMR Corp., 174 N.C. App. 128, 620 S.E.2d 288 (2005); however, in Perez, the defendant admitted the plaintiff's right to compensation by filing a Form 60. Here, defendants did not file a Form 60 admitting plaintiff's right to compensation for a back injury sustained on 17 June 2000. Therefore, the presumption does not apply to the case sub judice. Additionally, we note that the parties did not stipulate that plaintiff suffered a compensable back injury, only that he suffered a compensable injury  the extent of which was disputed.
Dr. McAvoy testified that there was no causal relationship between plaintiff's need for surgery and the 17 June 2000 incident. He further stated that "to suggest that that fall, relatively minor in severity, in June caused an increase in pain, but not until four months later, does not make any sense medically, physiologically, or otherwise." Dr. McAvoy also testified that the 17 June 2000 incident did not accelerate plaintiff's need for surgery.
Doctor Robert Elkins ("Dr. Elkins"), who reviewed plaintiff's medical records, testified that from the evidence he had, the fall neither aggravated, exacerbated, nor accelerated plaintiff's need for surgery. Near the end of his deposition, he again testified that the fall did not advance the need for surgery. Finally, plaintiff's own physician testified he could not say that the fall in the manhole exacerbated plaintiff's pre-existing back condition.
The testimony of these three doctors provides competent evidence supporting the Commission's findings of fact that no causal relationship existed between the 17 June 2000 fall into a manhole and the 31 July 2002 reconstructive surgery. Therefore, the Commission did not err in concluding as a matter of law that plaintiff was not entitled to compensation for the surgery, as this conclusion is justified by the findings of fact.
Plaintiff also contends that he is entitled to a fifty-five percent (55%) permanent partial disability rating rather than the five percent (5%) rating assigned. However, Dr. Elkins testified that pursuant to the North Carolina rating guidelines, a zero to five percent (0-5%) rating would be appropriate in plaintiff's case. Dr. Elkins was board-certified in independent medical evaluations. Although Dr. Reeg assigned a rating of fifty-five percent (55%), his rating was based upon plaintiff's condition subsequent to the surgery, which we already have held was not causally related to the 17 June 2000 incident. The competent evidence of record supports a five percent (5%) rating. Therefore, the Commission did not err in finding and concluding that plaintiff was entitled to compensation as set forth in its opinion and award.
Affirmed.
Judges McGEE and ERVIN concur.
Report per Rule 30(e).