***********
The Full Commission has reviewed the June 22, 2009 Order of Deputy Commissioner Rideout, based upon the record of the proceedings before the Deputy Commissioner and the briefs before the Full Commission. The appealing party has not shown good grounds to *Page 2 
reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission hereby affirms the June 22, 2009 Order of Deputy Commissioner Rideout with minor modifications.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following
 FINDINGS OF FACT
1. On September 7, 2007, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer. Erie Insurance Company is the workers' compensation insurance carrier on the risk.
3. On September 7, 2007, plaintiff sustained right knee and cervical spine injuries by accident arising out of and in the course of her employment with defendant-employer.
4. Following her injury, plaintiff received treatment for her cervical spine injury from Dr. Nailesh Dave. Dr. Dave is a neurologist, not an orthopedist. Drs. Kapil Rawal and Robert Allen also evaluated plaintiff's cervical spine condition. The treatment provided by Dr. Dave and the evaluations provided by Drs. Allen and Rawal have not alleviated the symptoms and impairments caused by plaintiff's cervical spine injury. Plaintiff continues to receive temporary total disability compensation and she participates in vocational rehabilitation being provided by defendant-insurer.
5. On January 5, 2009, Dr. Ralph Liebelt evaluated plaintiff's cervical spine injury. Dr. Liebelt performed a physical examination and reviewed plaintiff's previous medical records, including a cervical MRI. At that time, plaintiff was experiencing tingling into her left hand. *Page 3 
The MRI reviewed by Dr. Liebelt was of borderline quality. However, the MRI revealed disc space narrowing at C4-5, C5-6 and C6-7 with bilateral foraminal stenosis. At C6-7, plaintiff had a disc protrusion which effaced the nerve root at that level. The objective findings at C6-7 were consistent with her symptoms and consistent with an acute injury. Due to the poor quality of the original MRI, objective findings on the MRI and the persistence of her symptoms, Dr. Liebelt recommended that a new MRI be performed. According to Dr. Liebelt, plaintiff's future treatment options were dependent on the results of a new MRI. Potential treatment options include continued conservative treatment, epidural steroid injections and possibly surgery.
6. Plaintiff underwent the cervical MRI on March 13, 2009. Dr. Liebelt reviewed the March 13, 2009 MRI. The quality of the March 13, 2009 was superior to the quality of the previous MRI. The March 13, 2009 MRI revealed bony ribbing had developed on the vertebrae above and below the disc protrusion. The bony ribbing was not present at the time of the original MRI, which indicates that the disc protrusion at C6-C7 was acute rather than degenerative in nature.
7. After reviewing the March 13, 2009 MRI, Dr. Liebelt maintained his previous recommendations for treatment and evaluation of plaintiff's cervical spine. Dr. Liebelt has not recommended surgery as treatment for plaintiff's cervical spine condition. Based on the bony ribbing that developed between the original MRI and the subsequent MRI, Dr. Liebelt expressed the opinion that plaintiff's current cervical spine condition, including the disc protrusion at C6-C7, was caused by the accident on September 7, 2007. Dr. Liebelt also expressed the opinion that his recommendations for evaluation and treatment of plaintiff's cervical spine condition are reasonably necessary to treat that condition and to decrease plaintiff's disability.
8. During his deposition, Dr. Rawal reviewed the March 13, 2009 MRI. Dr. Rawal *Page 4 
agreed that the quality of the March 13, 2009 MRI was superior to the quality of the previous MRI. Dr. Rawal reviewed Dr. Liebelt's treatment recommendations, including his recommendation for epidural steroid injections. After reviewing the new MRI, Dr. Rawal testified that Dr. Liebelt's recommendations were reasonable and, in his opinion, plaintiff would benefit from epidural steroid injections.
9. Dr. Dave agrees with Drs. Liebelt and Rawal that the cervical epidural steroid injections and other conservative measures recommended by Dr. Liebelt are reasonably necessary to treat plaintiff's cervical spine condition.
10. After plaintiff underwent the March 13, 2009 MRI, Dr. Allen reviewed the radiologist's report of the MRI. Without re-examining plaintiff, he expressed the opinion that plaintiff's cervical condition does not warrant surgery. He declined to make an appointment for plaintiff to review the MRI. He also declined to offer plaintiff any medical treatment. Finally, Dr. Allen declined to provide the parties with a report concerning his review of the MRI.
11. Thereafter, Dr. Allen received a letter addressed to him which asked him questions concerning plaintiff condition. In his deposition testimony, Dr. Allen did not identify the author of the letter. There is no evidence that plaintiff, her attorney or defendants' attorneys wrote the letter to Dr. Allen. Neither plaintiff nor her attorney received a copy of the letter.
12. Carolyn Fiks is a nurse employed by defendant-insurer. Defendant-insurer assigned Ms. Fiks to serve as plaintiff's medical case manager. Ms. Fiks previously submitted a questionnaire to Dr. Rawal concerning plaintiff's condition and treatment. The questionnaire Ms. Fiks submitted to Dr. Rawal was not the Medical Status Questionnaire approved by the Industrial Commission pursuant to N.C. Gen. Stat. § 97-25.6. Ms. Fiks did not provide a copy of her questionnaire to plaintiff. *Page 5 
13. Based upon her ex parte communication with Dr. Rawal, it is reasonable to infer, and the Full Commission finds as fact, that the letter received by Dr. Allen was authored and sent to him by Ms. Carolyn Fiks. Ms. Fiks did not provide plaintiff or her attorney with a copy of her letter to Dr. Allen. Neither plaintiff nor her attorney knows the contents of the letter.
14. Although Dr. Allen previously determined that he had no treatment to offer plaintiff, after receiving Ms. Fiks' letter, Dr. Allen scheduled plaintiff for an appointment on May 19, 2009. On that date, plaintiff's symptoms were very similar to the symptoms she was experiencing in November 2007 when Dr. Allen first examined her cervical spine. Dr. Allen was of the opinion that plaintiff's cervical spine condition was caused by the accident on September 7, 2007. However, Dr. Allen did not offer plaintiff any treatment and recommended that she receive follow-up treatment from Dr. Dave. Considering that Drs. Liebelt, Rawal and Dave all expressed the opinion that plaintiff would benefit from epidural steroid injections and other conservative measures, the Full Commission gives less weight to Dr. Allen's opinion, which contradicts the consistent opinions of the other three physicians.
15. For her compensable right knee injury, defendants directed plaintiff to receive treatment from Dr. Mark Moriarity. Dr. Moriarity does not specialize in treatment of spinal conditions. Dr. Moriarity has been treating plaintiff's knee injury with Synvisc injections. Dr. Moriarity has expressed the opinion that plaintiff will require knee replacement surgery as a result of her September 7, 2007 knee injury.
16. Dr. Liebelt is qualified to treat plaintiff's knee injury and well as her cervical spine injury. Dr. Liebelt routinely administers Synvisc injections and performs total knee replacement surgeries. Dr. Liebelt is comfortable treating plaintiff's cervical spine condition and her knee injury. Dr. Liebelt is qualified to and is willing to treat both of plaintiff's injuries. *Page 6 
Plaintiff's continuity of care will be maximized if Dr. Liebelt treats plaintiff's knee and cervical spine injuries.
17. Dr. Liebelt is employed by Triangle Orthopaedic Associates. Triangle Orthopaedic Associates employs physiatrists who provide pain management treatment. Its physiatrists also administer cervical epidural steroid injections. Triangle Orthopaedic Associates has its own physical therapy department. The physical therapy department performs functional capacity evaluations. The multiple medical services provided by Triangle Orthopaedic Associates increases its ability coordinate its patients' treatment.
18. By motion filed on February 2, 2009, plaintiff sought the Industrial Commission's approval of her treatment by Dr. Liebelt. Plaintiff sought approval of treatment by Dr. Liebelt within a reasonable time.
19. The current condition of plaintiff's cervical spine, including the disc protrusion at C6-C7, was caused by the accident on September 7, 2007.
20. The treatment recommended by Dr. Liebelt is reasonably necessary to effect a cure, provide relief and to lessen plaintiff's period of disability.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On September 7, 2007, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's need for ongoing medical treatment for her right knee and her cervical spine is directly related to the injuries she sustained on September 7, 2007. Perez v. Am. Airlines/AMRCorp., 174 N.C. App. 128, 620 S.E.2d 288 (2005), disc. reviewimprovidently *Page 7 allowed, 360 N.C. 587, 634 S.E.2d 887 (2006); Parsons v.Pantry, Inc.,126 N.C. App. 540, 541-42, 485 S.E.2d 867, 869 (1997).
3. Plaintiff requested approval of future medical treatment by Dr. Ralph Liebelt within a reasonable time. The treatment recommended by Dr. Liebelt will tend to effect a cure, provide relief and lessen plaintiff's period of disability as a result of her cervical spine injury. Schofield v.Great Atlantic Pacific Tea Co.,299 N.C. 582, 264 S.E.2d 56 (1980).
4. Plaintiff is entitled to receive future medical treatment for her cervical spine injury and her right knee injury from Dr. Ralph Liebelt. Schofield v. Great Atlantic Pacific Tea Co.,299 N.C. 582, 264 S.E.2d 56 (1980).
 ***********
Based upon the foregoing findings of facts and conclusions of law, the Full Commission enters the following
 ORDER
1. Within ten (10) days of the date of this Order, defendants shall issue written authorization to Dr. Ralph Liebelt to provide future treatment for plaintiff's right knee injury and her cervical spine injury.
2. Defendants shall pay the costs.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING: *Page 8 
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER