***********
On July 12, 2010, Deputy Commissioner Ledford entered an Opinion and Award in which she concluded that Defendants had failed to rebut the presumption that the injury to Plaintiff's left shoulder, part of his left upper extremity, was caused by his admittedly compensable injury by accident on August 11, 2008, and that his left shoulder injury was compensable. Deputy Commissioner Ledford further concluded that Plaintiff's left shoulder complaints were causally related to his injury by accident on August 11, 2008, and that Defendants were responsible for payment of reasonably necessary medical treatment pursuant to N.C. Gen. Stat. §§ 97-2(9) and 97-25. On July 27, 2009, Defendants contemporaneously filed a Motion for Reconsideration of Deputy Commissioner Ledford's July 12, 2010 Opinion and Award, and a "Protective Notice of Appeal" to the Full Commission from the same Opinion and *Page 2 
Award. In his correspondence regarding Defendants'"Protective Notice of Appeal," counsel for Defendants informs the Industrial Commission Docket Director of the filing of Defendants' Motion for Reconsideration, and states:
 We believe that the filing of that motion precludes the need for any notice of appeal to preserve the issues for appellate review until fifteen days following the issuance of a ruling on that motion. If that is not the case, please treat this letter as defendants' notice of appeal to the Full Commission from the aforementioned Opinion and Award. . . .
On July 28, 2010, The Industrial Commission Docket Director sent the parties a letter acknowledging Defendants' July 27, 2010 notice of appeal to the Full Commission and indicating that the case had been entered on the review docket. On September 24, 2010, in response to Defendants' Motion for Reconsideration of her July 12, 2010 Opinion and Award, Deputy Commissioner Ledford entered an Amended Opinion and Award. That Amended Opinion and Award differed from the original Opinion and Award filed on July 12, 2010 in that it included a finding that, from the date of the termination of Plaintiff's employment with Defendant-Employer, through the date the evidence was closed, the medical evidence failed to show that Plaintiff was unable to earn wages in any employment due to his injuries, including his left shoulder injury, and that Plaintiff's inability to earn wages was due to a "lay off and general economic conditions." Based on these additional findings, Deputy Commissioner Ledford concluded in her Amended Opinion and Award that no benefits for temporary total disability were due Plaintiff. Defendants appealed to the Full Commission from Deputy Commissioner Ledford's Amended Opinion and Award.
After a careful review of the procedural history and relevant documents, the Full Commission has determined that the acknowledgment of Defendants'"Protective Notice of Appeal" of July 29, 2010 as an immediate notice of appeal to the Full Commission, and the *Page 3 
entering of the appeal on the Full Commission review docket at that time, was in error, as the time for filing a notice of appeal from Deputy Commissioner Ledford's July 12, 2010 Opinion and Award was tolled until Defendants' timely motion to reconsider her decision was ruled upon. As such, the controlling decision of Deputy Commissioner Ledford in this matter is the Amended Opinion and Award filed on September 24, 2010.
The Full Commission, having reviewed the Amended Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments before the Full Commission, finds that good grounds exist to reconsider the evidence of record. Accordingly, the Full Commission affirms in part and reverses in part the Amended Opinion and Award of Deputy Commissioner Ledford.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties through the Pre-trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to the Workers' Compensation Act at the time of Plaintiff's injury.
4. An employee-employer relationship existed between the employee and Coastal Transport, Inc. at the time of Plaintiff's injury. *Page 4 
5. The employer in this case is Coastal Transport, Inc., and the carrier is New Hampshire Insurance Company.
6. The employee sustained an admittedly compensable injury by accident on August 11, 2008.
7. The employee's average weekly wage is $559.41.
8. Pursuant to a Form 60 dated August 26, 2008, Defendants admitted compensability of "Left chest wall contusion/laceration and contusion left upper extremity." Plaintiff contends that he also sustained a left shoulder injury as a result of the aforementioned accident, however, Defendants have denied liability for any left shoulder injury.
9. The employee was paid for the entire day on the date of the alleged injury. The employee last worked for Coastal Transport, Inc. on December 18, 2008, and was subsequently laid off.
10. The employee returned to work for Coastal Transport, Inc. on October 16, 2008, earning an average wage of $559.41 per week. The carrier paid the employee compensation for total disability from August 12, 2008 through October 20, 2008.
11. At the time of the hearing before the Deputy Commissioner, the parties submitted the following exhibits via stipulation:
 a. Medical Records, Stipulated Exhibit 1.
 b. Plaintiff's Answers to Defendants' Interrogatories, Stipulated Exhibit 2.
 c. Defendants' Answers to Plaintiff's Interrogatories, Stipulated Exhibit 3.
 d. IC Forms, Stipulated Exhibit 4.
 e. Plaintiff's Recorded Statement, Stipulated Exhibit 5.
 f. Pre-Trial Agreement, Stipulated Exhibit 6. *Page 5 
12. Following the hearing before the Deputy Commissioner, with cover letter dated September 23, 2009, Plaintiff's counsel submitted additional exhibits, which were received into evidence via stipulation of the parties as Stipulated Exhibit 7.
 * * * * * * * * * * * ISSUES
1. Whether Plaintiff also sustained injury to his left shoulder as a result of the admittedly compensable accident of August 11, 2008?
2. What compensation and medical benefits, if any, are due Plaintiff?
 * * * * * * * * * * *
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 35 years of age as of the date of the hearing before the Deputy Commissioner, having a date of birth of May 6, 1975. Plaintiff is a high school graduate. Prior to working for Defendant-Employer, Plaintiff's work experience included work in manufacturing as a forklift operator and machine operator. In February 2006, Plaintiff began working as a truck driver for Defendant-Employer.
2. On August 11, 2008, Plaintiff was working as a short-haul driver for Defendant-Employer, and was picking up a load of bricks at Hansen Brick in Columbia, South Carolina. As Plaintiff was pulling a tarp over the load of bricks, he misstepped and fell four to six feet from the passenger's side of the truck to the ground. Plaintiff hit the ground on his left side with his arm under his rib cage. According to Plaintiff's testimony and his recorded statement taken shortly after the accident, when he fell, he struck his shoulder and forearm and had his breath *Page 6 
knocked out of him. When he fell, Plaintiff was wearing his safety glasses and his hardhat, which protected his head.
3. Jimmy Carson Oxendine, another driver for Defendant-Employer who was also at Hanson Brick, saw Plaintiff as he was getting up after his fall. When Mr. Oxendine reached Plaintiff, Plaintiff was on his feet and leaning against the trailer. Plaintiff told Mr. Oxendine that his left side hurt, and Mr. Oxendine observed that Plaintiff was in pain. Mr. Oxendine finished securing the tarp over Plaintiff's load before leaving.
4. Plaintiff reported his accident to David Sain, Defendant-Employer's Mocksville terminal manager. Mr. Sain told Plaintiff that he could call an ambulance or seek medical care immediately. Plaintiff declined this offer, deciding instead to wait until he returned home. Plaintiff then drove approximately two and one-half hours from Columbia, South Carolina to Red Springs, North Carolina.
5. After Plaintiff arrived home, his wife drove him to the emergency room at Moore Regional Hospital (FirstHealth) in Pinehurst, North Carolina. There, Plaintiff complained of pain on his left side and ribs. It was noted that Plaintiff did not hit his head, and chest x-rays were negative for any fracture. Plaintiff was diagnosed with acute rib contusions and prescribed pain medicine.
6. By the filing of a Form 60 dated August 26, 2008, Defendants admitted that Plaintiff sustained "Left chest wall contusion/laceration and a contusion left upper extremity." While Plaintiff contends that he also sustained a left shoulder injury as a result of the fall, Defendants deny liability for any left shoulder condition. *Page 7 
7. On August 15, 2008, Plaintiff began treating with Dr. Omar Rodriguez of NextCare in Lumberton, North Carolina. Plaintiff's primary complaint was left rib pain, and Dr. Rodriguez initially wrote Plaintiff out of work completely.
8. On or about August 20, 2008, Dr. Rodriguez released Plaintiff to return to work with restrictions including no lifting over ten pounds and no climbing ladders or bending. Dr. Rodriguez reiterated these restrictions on September 3, 2008.
9. Plaintiff gave a recorded statement to the carrier on or about August 24, 2008. In his statement, Plaintiff told the adjuster that when he fell, he landed on the asphalt on his left side. He also reported that when he landed, "my left arm was up under my ribs, I landed on my, on my shoulder and my forearm."
10. Following his fall, moving his left shoulder caused Plaintiff pain in his rib cage, and Plaintiff avoided lifting and using his left arm as a result. Because Plaintiff was limiting the use of his left arm due to the pain that it caused in his rib cage, Plaintiff was not aware of the extent of any injury to his left shoulder at the time he gave this recorded statement.
11. Upon returning to work, Plaintiff did not have full use his left arm for maneuvers such as covering his loads with a tarp. Mr. Oxendine saw Plaintiff working and pulling tarps over his loads using only his right arm.
12. Plaintiff was referred to physical therapy, and came under the care of Kenneth Schmidt, LPT of Carolina Complete Rehabilitation Center in Fayetteville, North Carolina on September 26, 2008. Plaintiff complained of pain on the left side with movement, and Mr. Schmidt found that Plaintiff's range of motion in his left shoulder was significantly limited. Specifically, Mr. Schmidt determined that Plaintiff's flexion was approximately 105 degrees and *Page 8 
his abduction was 100 degrees, whereas the normal range for both flexion and abduction would be between 170 and 175 degrees.
13. On September 10, 2008, Plaintiff was given restrictions including no lifting over twenty pounds and no climbing ladders or bending by Dr. J. D. McAllister, Dr. Rodriguez's partner.
14. As Plaintiff continued to participated in physical therapy and began to increase his range of motion of his shoulder, it became painful. Using the hand cycle during therapy caused pain in Plaintiff's shoulder, and during a therapy session on or about October 6, 2008, Plaintiff felt a pop in his left shoulder, which he reported to Mr. Schmidt. Plaintiff also informed Mr. Schmidt that he experienced pain upon raising his left arm.
15. On October 9, 2008, Plaintiff informed Mr. Schmidt that he could not sleep on his left side because of pain in his left shoulder. As he had no authorization to treat Plaintiff's left shoulder, Mr. Schmidt conveyed Plaintiff's complaint to NextCare and referred Plaintiff back to the doctor for left shoulder evaluation.
16. On October 11, 2008, Plaintiff was seen at NextCare by April Martin, PA-C. Plaintiff complained of stiffness, pain and popping in his left shoulder, and it was noted that his left upper extremity was "stiff" and was aggravated by movement. Ms. Martin diagnosed Plaintiff with left shoulder and arm sprain, and recommended that he be referred back to physical therapy for his shoulder.
17. On September 25, 2008, and again on October 15, 2008, Dr. Rodriguez released Plaintiff to return to work without restrictions. Dr. Rodriguez's notes from October 15, 2008 indicate that Plaintiff had developed left shoulder pain during physical therapy. *Page 9 
18. Dr. Rodriguez opined that, because Plaintiff experienced pain in his chest wall, "maybe he's not able to move his shoulder as much and when he went to move it he developed some pain secondary to movement." Dr. Rodriguez was not sure whether Plaintiff's shoulder condition was caused by falling out of the truck, although he opined that it was possible that Plaintiff's shoulder condition was causally related to his physical therapy.
19. On August 25, 2009, Plaintiff was examined at Sandhills Emergency Medicine by Dr. Don Bahner, Jr., who is board certified in emergency medicine. Plaintiff complained of left shoulder pain, and popping which was worse at night. Plaintiff indicated that he had been experiencing pain for approximately one year following his fall on August 11, 2008. Upon examination, Dr. Bahner found that Plaintiff had limited internal and external rotation and abduction of his left shoulder. Plaintiff's range of motion when lifting his arm up was approximately 90 degrees, which Dr. Bahner opined was not normal.
20. Dr. Bahner opined that Plaintiff needed to be evaluated by an orthopaedist in order to determine the extent and cause of his left shoulder injury.
21. Plaintiff has not had an orthopaedic evaluation or any diagnostic testing for his left shoulder. The Full Commission finds that Plaintiff is in need of further evaluation for his left shoulder by an orthopaedic specialist, as recommended by Dr. Bahner.
22. Plaintiff was "laid off" from his employment with Defendant-Employer in December 2008, along with a number of other employees. Plaintiff was unsuccessful in his attempts to find another job driving a truck after his employment was terminated.
23. There is insufficient evidence in the record upon which to make a determination as to what additional compensation, if any, is owed Plaintiff. Therefore, this case should be remanded for the taking of additional evidence on that issue. *Page 10 
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On August 11, 2008, Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with the Defendant-Employer. Defendants accepted the claim as compensable and noted injury to Plaintiff's left chest wall and left upper extremity. N.C. Gen. Stat. § 97-2(6).
2. As Defendants filed a Form 60 accepting this claim, and listed an injury to Plaintiff's "left upper extremity," the burden is on Defendants to rebut a presumption that the injury to Plaintiff's left shoulder is causally related to his original compensable injury by accident. N.C. Gen. Stat. § 97-82(b); Parsons v. Pantry,126 N.C. App. 540, 485 S.E.2d 867 (1997); Perez v. AmericanAirlines, 174 N.C. App. 128, 620 S.E.2d 288 (2005).
3. Considering the testimony of Dr. Rodriguez, Dr. Bahner, and Mr. Schmidt, Defendants have failed to rebut the presumption that the injury to Plaintiff's left shoulder, a part of his left upper extremity, was caused by his injury by accident of August 11, 2008. Therefore, the same is found to be related and compensable. Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003).
4. Having determined that Plaintiff's left shoulder complaints are causally related to his injury by accident of August 11, 2008, Defendants are responsible for payment for all reasonably necessary medical treatment for the same, including the assessment by Dr. Bahner and any further treatment that may be necessary. N.C. Gen. Stat. §§ 97-2(19), 97-25. *Page 11 
5. This case should be remanded to a deputy commissioner for the taking of additional evidence on the issue of what additional compensation, if any, is owed Plaintiff.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. This case is remanded to Chief Deputy Commissioner Wanda B. Taylor for assignment to a deputy commissioner for the taking of additional evidence on the issue of what additional compensation, if any, is owed Plaintiff.
2. Defendants shall pay for all medical treatment reasonably necessary for Plaintiff's left upper extremity and shoulder injuries caused by the accident of August 11, 2008.
3. Defendants shall pay the cost of this action, including the expert witness fees approved, if they have not already been paid.
This the __ day of March, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 12 
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1