***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Houser.
 *********** ISSUES TO BE DETERMINED
1. Whether plaintiff is entitled to receive additional indemnity and medical compensation as a result of her 26 January 2005 injury by accident.
2. Whether plaintiff's October 2007 back pain is causally related to her *Page 2 
26 January 2005 admittedly compensable injury by accident.
 ***********
The Full Commission finds as fact and concludes as matters of law the following stipulations of the parties:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and that the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or non-joinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. On all relevant dates, plaintiff's average weekly wage was $531.76, yielding a compensation rate of $354.52.
5. An employment relationship existed between plaintiff-employee, Ms. Vanessa Jackson, and defendant-employer, UNC Hospitals, and Key Risk Management Services was the administrator on the date of injury, 26 January 2005, and Corvel Corporation is now the administrator.
6. At and subsequent to the hearing before the Deputy Commissioner the parties submitted the following:
 a. A Packet of Stipulated Documents, which was admitted into the record and marked as Stipulated Exhibit (2) and which included the following;
 i. Industrial Commission Forms, and;
 ii. Medical Records. *Page 3 
 b. A Packet of Accident Related Documents, which was admitted into the record and marked as Stipulated Exhibit (3).
7. Also made part of the record are the depositions of Dr. Kenneth O. Price, Dr. Sivakum Jaikumar, and Dr. Chason S. Hayes.
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is forty-nine (49) years-of-age with her date of birth being 10 September 1961.
2. Plaintiff was employed by defendant-employer as a Certified Nursing Assistant, hereinafter (CNA). In that capacity, plaintiff's duties included checking vital signs, transporting patients, transferring patients, and hanging IV bags.
3. On 26 January 2005, plaintiff sustained an injury to her low back while lifting a patient. Defendants accepted plaintiff's back injury as compensable through the filing of an Industrial Commission Form 60.
4. Plaintiff first sought medical treatment on 24 February 2005 from Dr. Tim McGrath. Following an examination, plaintiff was diagnosed as having back pain and spasms.
5. Plaintiff also sought treatment with UNC Occupational Medicine. Records from that facility dated 4 March 2005 reflect that plaintiff reported experiencing radiating pain in her left leg in addition to her back pain.
6. On 7 March 2005, plaintiff underwent a lumbar MRI, the results of which revealed a posterior herniation of the L4-L5 disc and degenerative changes at the L4-L5 level. *Page 4 
7. On 29 March 2005, plaintiff was referred by Dr. McGrath to Dr. Kenneth Price, a neurosurgeon. Dr. Price diagnosed plaintiff as having a left sided disc bulge at L4-L5 that could be in contact with the left L5 nerve root leading to radicular pain in her left lower extremity. Dr. Price discussed multiple treatment options with plaintiff, who declined surgery and epidural injections at that time. Dr. Price referred plaintiff to physical therapy and continued her on her medications. Additionally, Dr. Price excused plaintiff from work for the period during which she was participating in physical therapy.
8. On 20 May 2005, Dr. Price reviewed the results of a functional capacity evaluation, hereinafter (FCE), and released plaintiff to return to sedentary work with lifting restrictions. Specifically, plaintiff was at a medium work level of maximum floor to knuckle lifting at twenty-five (25) pounds, knuckle to shoulder lifting at twenty-five (25) pounds, and shoulder to overhead lifting at thirteen (13) pounds. Additionally, plaintiff was permitted to sit on a constant basis with occasional walking, standing, crouching, stair climbing and stooping and frequent balancing, reaching, twisting and kneeling. With these restrictions, plaintiff was unable to return to work for defendant-employer as a CNA.
9. Also on 20 May 2005, Dr. Price found plaintiff to be at maximum medical improvement, but did not assign any permanent partial disability rating.
10. Plaintiff testified that her low back pain never totally resolved after being released by Dr. Price. Ms. Karen Mitchell, plaintiff's friend and neighbor, testified similarly regarding plaintiff's ongoing back problems.
11. Plaintiff subsequently returned to work for defendant-employer as a receptionist in its dental clinic. In that capacity, plaintiff's duties included answering the telephone, returning calls, making appointments, seeking Medicaid approval, pulling charts, and filing charts. *Page 5 
12. On 3 October 2005, plaintiff was involved in a motor vehicle accident as a passenger in a car that was rear ended. Thereafter, plaintiff sought treatment from the Kernodle Clinic for neck pain and was provided medication.
13. On 16 December 2006, plaintiff was involved in another motor vehicle accident as the driver of a van when she was struck from behind by a motorcycle. Plaintiff again sought treatment from the Kernodle Clinic, and records from that facility reflect that she reported experiencing stiffness and low back pain, but no weakness or numbness in her lower extremities. Plaintiff was diagnosed as having sustained a strain and continued on medication.
14. In December 2006, plaintiff was a passenger in a vehicle that traveled from her home in Mebane, North Carolina to Alabama. This trip took approximately eight (8) hours. While in Alabama, plaintiff sought treatment at an emergency room on 29 December 2006, and reported experiencing low back pain and some left toe numbness.
15. Upon returning to North Carolina, plaintiff returned to Dr. McGrath on 3 January 2007. Dr. McGrath ordered another MRI, the results of which were substantially unchanged from the MRI taken on 7 March 2005.
16. On 6 January 2007, defendant-employer requested that plaintiff begin working as a dental assistant in its dental clinic. As a dental assistant, plaintiff's duties included escorting patients to the dental chair, retrieving instruments, and cleaning. These duties require standing, leaning, and bending. Plaintiff testified that her low back pain worsened after she began working in the dental assistant position.
17. In early October 2007, plaintiff's daughter's birthday was approaching and plaintiff was performing tasks outside of work in preparation for a party. During the performance of these tasks, plaintiff either sustained a new injury to her back, or exacerbated her *Page 6 
pre-existing low back condition. Plaintiff testified that her back pain in October 2007 was excruciating, but denied any new specific injury. Contrary thereto, defendants contend that plaintiff did sustain a new injury that was unrelated to her employment.
18. On 8 October 2007, plaintiff sought treatment at NextCare where she was diagnosed as having back pain. Plaintiff was provided medications and released.
19. On 10 October 2007, plaintiff sought treatment at Cornerstone Medical Center and reported a history of chronic intermittent low back pain that usually resolved. Plaintiff was diagnosed as having significant low back pain that was related to her herniated disc. On 12 October 2007, plaintiff returned to Cornerstone Medical Center and was medically excused from work for two to three weeks.
20. On 14 October 2007, plaintiff sought treatment at the UNC Ambulatory Care Clinic and reported her 26 January 2005 workplace injury, a history of radiating low back pain and that her condition had been complicated by the 16 December 2006 motor vehicle accident. From this facility, plaintiff was referred to Dr. Moe Lim with the UNC Orthopedic Clinic.
21. Plaintiff was first examined by Dr. Lim on 24 October 2007. Records from that date reflect that plaintiff reported experiencing low back and left leg pain that had been present since early October 2007. Dr. Lim assigned plaintiff revised work restrictions of no standing more than fifteen (15) minutes, and no lifting more than thirty (30) pounds.
22. On 2 November 2007, plaintiff returned to UNC Orthopedic Clinic and was examined by Dr. Kaori Longphre. Records from this date reflect that plaintiff reported that her symptoms had been relatively well until her December 2006 motor vehicle accident. On 9 November 2007, plaintiff was written out-of-work until her next appointment on 10 December 2007. *Page 7 
23. On 12 December 2007, a third MRI was done, the results of which were substantially unchanged from the two previous MRIs.
24. On 17 December 2007, plaintiff had a surgical consultation with Dr. Sasaki-Adams and Dr. Sivakum Jaikumar at UNC Neurology Clinic. Plaintiff declined surgery at this time, but both physicians advised her that she could reconsider surgery if her symptoms worsened.
25. Dr. Jaikumar testified the disc herniation in plaintiff's back could have occurred before her 26 January 2005 injury by accident and only became symptomatic thereafter. Additionally, Dr. Jaikumar has opined that the birthday party preparation, the two motor vehicle accidents, and her car ride to Alabama, could be the cause of plaintiff's symptoms.
26. Beginning in 2008, plaintiff began receiving short-term disability compensation from a plan funded by defendant-employer.
27. On 12 March 2008, plaintiff sought additional treatment from Dr. David Ward of Carolina Bone Joint, and reported her 26 January 2005 workplace injury, her low back and left lower extremity pain and that her symptoms had again flared in October 2007. Dr. Ward diagnosed plaintiff as having lumbar nerve root irritation secondary to a significant lumbar disc protrusion at L4-L5.
28. On 17 March 2008, plaintiff experienced another flare-up of her pain while at home. Thereafter, plaintiff was examined at the emergency department of Alamance Regional Medical Center and admitted for four days due to being unable to walk. An MRI was taken at the hospital, the results of which again were substantially unchanged from the three previous MRIs. *Page 8 
29. On 5 June 2008, Dr. Ward wrote to defendant-employer indicating that he had reviewed job descriptions for the general assistant and administrative receptionist positions. Dr. Ward further indicated that based upon plaintiff's current condition, she was able to work in a sedentary to light duty position that did not require repetitive bending, stooping, climbing, or prolonged standing or sitting. Additionally, plaintiff was not to lift more than twenty (20) pounds.
30. There is no evidence of record that subsequent to Dr. Ward approving the general assistant and administrative receptionist positions that defendant-employer ever contacted plaintiff in an effort to have her return to work or to formally offer either of these positions.
31. On 5 December 2008, plaintiff was examined by Dr. Chason Hayes, who is in the same practice as Dr. Ward. Dr. Hayes has opined that plaintiff's herniated disc was more likely than not causally related to her 26 January 2005 admittedly compensable injury by accident.
32. On 14 August 2009, plaintiff returned to Dr. Price and an additional MRI revealed a L4-L5 disc protrusion and severe left lateral stenosis. On 17 September 2009, Dr. Price performed L4-L5 micro lumbar discectomy on plaintiff. During that procedure, significant scarring was detected on the L5 nerve root.
33. Dr. Price has opined to a reasonable degree of medical certainty that the condition for which he performed surgery on plaintiff was causally related to plaintiff's 26 January 2005 injury by accident.
34. Given the filing of their Industrial Commission Form 60, theParsons' presumption applies in this matter, thereby making it defendants' burden to prove that plaintiff's ongoing low back condition for which she underwent surgery is not causally related to her admittedly compensable 26 January 2005 injury by accident involving her back. *Page 9 
35. Based upon the totality of the credible evidence of record, defendants have failed to rebut the Parsons' presumption regarding plaintiff's ongoing low back condition for which she underwent surgery.
36. Assuming, arguendo, that the Parsons' presumption had been rebutted, there is sufficient medical evidence of record upon which to independently find that plaintiff's ongoing low back condition for which she underwent surgery was the direct and natural result of and causally related to her 26 January 2005 injury by accident.
37. Based upon the totality of the credible vocational and medical evidence of record, and as the result of her 26 January 2005 admittedly compensable injury by accident and related surgery, plaintiff was unable to earn any wages in her former positions with defendant-employer or in any other employment for the periods of 12 October 2007 to 2 November 2007, 9 November 2007 to 10 December 2007, and from 17 December 2007 through the present and continuing.
38. Defendants have not unreasonably defended this claim.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 26 January 2005, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer involving her back. N.C. Gen. Stat. § 97-2(6).
2. Given the filing of their Industrial Commission Form 60, theParsons' presumption applies in this matter, thereby making it defendants' burden to prove that plaintiff's *Page 10 
ongoing low back condition for which she underwent surgery is not causally related to plaintiff's admittedly compensable 26 January 2005 injury by accident to her back. Parsons v. Pantry,Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997); Perez v.American Airlines, 174 N.C. App. 128, 620 S.E.2d 288 (2005).
3. Based upon the totality of the credible evidence of record, defendants have failed to rebut the Parsons' presumption regarding plaintiff's ongoing low back condition for which she underwent surgery. Id.
4. Assuming, arguendo, that the Parsons' presumption had been rebutted, there is sufficient medical evidence of record upon which to independently conclude that plaintiff's ongoing low back condition for which she underwent surgery was the direct and natural result of and causally related to her 26 January 2005 injury by accident. N.C. Gen. Stat. § 97-2(6); Click v. Pilot FreightCarriers, Inc., 300 N.C. 164, 265 S.E. 2d 389 (1980);Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Bus. Furn.,353 N.C. 227, 538 S.E.2d 912 (2000).
5. A claimant can prove their disability in one of four ways by production of: (1) medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work or any employment; (2) evidence that he is capable of some work, but has after reasonable effort has been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employments; or (4) evidence that he has obtained other employment at a wage less than that earned prior to the injury.Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993) *Page 11 
6. Based upon the totality of the credible vocational and medical evidence of record, and as the result of her 26 January 2005 admittedly compensable injury by accident and related surgery, plaintiff is entitled to be paid by defendants temporary total disability compensation at the rate of $354.52 per week for the periods of 12 October 2007 to 2 November 2007, from 9 November 2007 to 10 December 2007, and from 17 December 2007 through the present and continuing until such time as she returns to work or further Order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowe's Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
7. As the result of her 26 January 2005 admittedly compensable injury by accident and related surgery, plaintiff is entitled to have defendants pay for all related medical treatment incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1.
8. As defendants have not unreasonably defended this claim, plaintiff is not entitled to costs or attorney fees pursuant to N.C. Gen. Stat. § 97-88.1.
9. Defendants are entitled to a credit for any employer-funded short term disability or long term disability payments paid to plaintiff, but not for benefits paid under any supplemental policy. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $354.52 per week for the periods of 12 October 2007 to 2 November 2007, from *Page 12 
9 November 2007 to 10 December 2007, and from 17 December 2007 through the present and continuing until such time as she returns to work or further Order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay for all related medical treatment incurred or to be incurred by plaintiff, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when the medical bills have been approved according to established Industrial Commission procedures.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
4. Any compensation awarded plaintiff is subject to a credit for any employer-funded short term disability or long term disability payments paid to plaintiff.
5. Defendants shall pay the costs.
This is the 3rd day of November 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/_______________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 13 
 S/_______________ LINDA CHEATHAM COMMISSIONER *Page 1